## JOSEPH W. BOND ET AL. v. EDWARD W. COX.

1. On an application for the benefit of the insolvent laws, creditors may examine witnesses or offer evidence on the subject of the arrest of the debtor.
2. Opposing creditors, or their counsel, have a right to propound interrogatories to the debtor in respect to his giving an inventory to the officer who arrested him, and it is the duty of the court to allow all interrogatories that are legal and pertinent.
3. In order to give the court jurisdiction of such application, the debtor, at the time of giving bond, should be under arrest or held in custody.

On the 3d May, 1862, Cox was arrested by the sheriff of the county of Burlington, upon a writ of *ca. sa.*, issued out of the Circuit Court of said county, at the suit of Joseph W. Bond *et al.* On the 16th September, of same year, he filed a petition to be discharged under the act abolishing imprisonment for debt in certain cases. The application came on to be heard before the Common Pleas of said county on the 25th November, at a special term of the court; when, after the hearing the defendant and the plaintiffs as opposing creditors, the defendant was discharged.

A *certiorari* was sued out by the plaintiffs to remove the proceedings into this court, and a state of the case, signed by the judges of the Pleas, has been returned with the writ, which is as follows: "This cause came on to be heard," &c., (omitting the formal part).

"The counsel for the applicant offered in evidence the papers filed in the case and the proceedings of the court at the term of September then last past, and proved, by affidavit, the publication of the notice of this application on the plaintiffs and the non-residence of the other creditors. The applicant was then sworn, and in answer to interrogatories administered by the clerk of said court, testified: that before the 16th September, 1862, and subsequent to the then next preceding term of this court, he was arrested for debt or damages, and gave bond pursuant to the act in such case

made and provided; that his arrest was compulsory; that the account annexed to his petition contains a fair and true account of all his estate, both real and personal, either in possession, remainder, or reversion; and also a just and true inventory of all his deeds, bonds, notes, books of account, vouchers, and specialties whatever, with the sum due thereon; and a list of all his creditors, with the amount of debts due to them and owing, and that he had advertised the hearing, and given notice thereof to his several creditors, as the laws of New Jersey direct.

"And on a cross-examination by the counsel of the opposing creditors, the said applicant further testified, that he was arrested on Saturday afternoon, the afternoon of the day that the hearing was had before Judge Vredenburgh; that he was arrested by sheriff Leeds, at the store kept by himself, and told the sheriff that he would come up to the jail; that he afterwards, about seven o'clock, went up to the jail, and surrendered himself to the custody of the sheriff; that he was released from the custody of the sheriff that evening; was not locked up, was not detained; and that Mr. Levis and Mr. Conover were there with him; that he was allowed by the sheriff to go away that evening; that the sheriff was present at the time he left, and that he then went down to his place of business; that he was free on the next day; that the following Monday he proceeded and gave bond to the sheriff, and that Samuel A. Dobbins and Benjamin F. Shreve were his bondsmen; which bond was then and there produced and shown, bearing date the fifth day of May, A. D. eighteen hundred and sixty-two.

"The answers given by the applicant on the said examination and cross-examination were reduced to writing by the clerk of the court under the direction of the court.

"The counsel of the opposing creditors then asked leave of the court to question the applicant in regard to his giving an inventory; which was objected to by the opposing counsel; and the court, after hearing argument, refused to allow the counsel of the opposing creditors to ask the applicant any

·questions in regard to the inventory, and the counsel for the ·opposing creditors then took exceptions to such decision as ·erroneous.

" The counsel of the opposing creditors then asked leave of the court to call the sheriff who made the arrest, to interro- ·gate him in regard to the facts of the arrest of said applicant, and of his subsequent release, and the time and manner of giving the said bond and alleged inventory, which was also denied by the court; and the counsel for the opposing credi- tors then excepted to such decision as erroneous.

" The counsel for the applicant then moved to discharge the prisoner, to which the counsel for the opposing creditors ob- jected, for two reasons :

" First, because there was no such inventory, as required by the statute, annexed to the bond given to the sheriff, . which said inventory was in the words following, to wit: " Inventory of Edward A. Cox, of Mount Holly, in the county of Burlington, made pursuant to the second section ·of the act entitled, ' an act abolishing imprisonment on civil process in certain cases,' this fifth day of May, in the year ·of our Lord one thousand eight hundred and sixty-two. No goods, chattels, rights, credits, lands, tenements, or real estate (save only the goods set apart by the sheriff of the ·county of Burlington for the use of a debtor having a family, according to law). Second, because, at the time of the giving ·of the bond to the sheriff, (as appeared by the testimony of the applicant) the said applicant was not under the arrest of, ·or in the custody of the sheriff, and therefore was not enti- tled to give bond or make application for this discharge ; both ·of which objections were overruled by the court, and the counsel for the opposing creditor then excepted to such deci- sion as erroneous.

" The court then proceeded, and appointed Franklin B. Levis as assignee, to whom said applicant forthwith executed an assignment of all his estate whatsoever, real and personal, wheresoever and whatsoever, and all deeds and vouchers whatsoever relating to the same. Whereupon the said court

did order and direct the said Edward B. Cox to be discharged from the custody of the sheriff of the county of Burlington on account of any debt by him previously contracted."

The plaintiffs assigned, as reasons for setting aside the judgment and proceedings of the Common Pleas, that the court erred in refusing to allow them to examine the applicant in regard to his giving an inventory, and to offer any evidence in regard to the arrest of the applicant, his subsequent release, and the time and manner of his giving bond and security; and because there was no legal inventory given to the officer, and the applicant was not under arrest at the time of giving the bond.

For the plaintiff in *certiorari*, *F. Voorhees*.

For the defendant, *E. Merritt.*

The opinion of the court was delivered by

HAINES, J.    Edward A. Cox, having been discharged, as an insolvent debtor, by the Court of Common Pleas of the county of Burlington, the plaintiffs in *certiorari*, being creditors, question the legality of the proceedings.   One of the reasons assigned for reversing the judgment and setting aside the proceedings is, that the creditors were not allowed by the court to examine witnesses, or to offer any evidence on the subject of the arrest of the debtor.   On such hearing, witnesses are to be examined to prove the service and publication of the notices of the application and all preliminary questions, that the court may determine whether the applicant is in a condition to be heard; his creditors having had no opportunity of being present to make their objections. One of the requirements to the condition of the creditor to be heard is, his being under arrest or in custody at the time of giving bond conditioned for his making application for his discharge.   He must show, to the satisfaction of the court, that he has a right to make his application; that he was either in actual custody under the act of 1795, and its sup-

Bond v. Cox.

plements, or in the constructive confinement of subsequent acts. He is competent to prove his arrest or confinement, but his answers to interrogatories on that question are not conclusive. The court may, if it see fit, require additional evidence, or the creditors may controvert his statement. *Hamilton* v. *Chevallier*, 3 *Harrison's R.* 434. In *Wallace* v. *Coil*, it was by this court, after full argument, held that evidence offered by the opposing creditor, to show that the cause of imprisonment was such that the debtor was not entitled to his discharge, was properly received. In this case the court erred in not permitting the creditors to introduce proof on that subject.

2. Another reason assigned is, that the court refused to allow the opposing creditors, or their counsel, to ask the debtor any question in respect to his giving an inventory to the officer who arrested him. The act of February, 1830, re-enacted 15th April, 1846, *Nix. Dig.* 331,* prescribes the terms on which a person arrested or held in custody, in any civil action, may be discharged from such arrest or custody. One of those terms is the delivery to the officer of a true and perfect inventory, under oath, of all his property, rights, and effects. The delivery of the inventory was held by the court, in *Davis* v. *Hendrickson*, 3 *Green's R.* 481, to be necessary to place the debtor in a condition to make application for his discharge as an insolvent debtor. It is only on the delivery of the bond mentioned in the statute, together with the inventory, that the officer had a right to discharge him from custody. It was proper, therefore, that the creditors should have been permitted to inquire respecting this first preliminary step in the proceedings to obtain his discharge, and the refusal was an error in the court below. On the argument here, it was insisted, and it seems to have been made a point before the Court of Common Pleas, that the creditors have *de jure* no power of examination; that they can examine only by permission of the court. The statute provides for the examination of the debtor on interrogatories proposed by the court; but it does not contemplate that the

*Rev., p. 857.*

court will, of itself, dictate or write the interrogatories. It may, and usually does act through its officers, the clerk, or counsel. The statute gives power to control the course of examination, and to prevent illegal or irrelevant questions, and to exercise therein a legal, and not an arbitrary discretion. But it is the right of the opposing creditor to propound interrogatories, and the duty of the court to allow all that are legal and pertinent to be put to the debtor. The creditor is a party to the proceedings, entitled to be heard, and to make a ground for his objections through interrogatories. The creditor stands somewhat in the relation of a witness, to make his case and show his right to a discharge; the interrogatories proposed by the creditors are in the nature of a cross-examination, and if legal and pertinent, should not be overruled.

3. Another reason for reversal is, that the debtor, at the time of giving bond conditioned for his appearance, and application for the benefit of the insolvent laws, was not under arrest or held in custody. The court can entertain no jurisdiction of such an application, unless it is alleged in the petition, and shown on the examination of the debtor, that he was under arrest or held in custody at the time of giving bond. The bond and inventory, so given are substituted for the actual confinement within the four walls, and for the prison limits provided by statute. This requisite is as indispensable to the creditor, to apply for a final discharge in the one case as in the other. He must either be in actual confinement within the walls of the prison, or in the prison limits, or under the obligation of the bond required by the act. By the 5th section of the act for the relief of persons imprisoned on civil process, *Nix. Dig.* 352,* it is made the duty of the court at the time of the hearing, to examine the debtor touching his confinement, whether his imprisonment was compulsory or voluntary; and if it appear that his confinement was not compulsory, to stay all further proceedings in the case. The debtor must, therefore, not only have been under arrest or in custody, but under compulsory confinement. By the state-

*Rev., p. 499, § 10.

of the case, it appears that the debtor was arrested on a writ of *capias ad satisfaciendum* on the third day of May, 1862, and was in the custody of the sheriff at the jail, but not locked up; that he was released from the custody of the sheriff that evening, and by him allowed to go at large; and that, on the fifth of May, he executed and delivered to the sheriff the bond conditioned for his application for a discharge. The debtor clearly was not in custody nor under the control of the officer at the time of giving the bond. The sheriff, by suffering him to go at large, was guilty of a voluntary escape, and had no power to re-arrest him. If, as was suggested on the argument, the right to re-arrest was personal with the debtor, and that with his assent the sheriff might again take him into custody, then such consent made the confinement voluntary, and not compulsory, and the court was bound to stay all further proceedings in the case.

The discharge of the debtor under such circumstances was erroneous, and the judgment and proceedings of the Court of Common Pleas must be reversed and set aside.